RONALD J. FISHER (State Bar No. 298660)
E-Mail: *rfisher@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for CrowdVolt, Corp.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| CrowdVolt, Corp.,<br>Plaintiff,<br>v.<br>Radiate the World, Inc.,<br>Defendant. | Case No. 26-cv-10284<br>**COMPLAINT** |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Plaintiff CrowdVolt Corp. ("CrowdVolt"), by and through its undersigned counsel, alleges as follows against Defendant Radiate the World, Inc. ("Radiate"):

**INTRODUCTION**

1. This action arises from a calculated campaign by Defendant Radiate to surveil, imitate, and then coerce a smaller competitor—Plaintiff CrowdVolt—through the use of threatened criminal prosecution as leverage to gain advantage in an ordinary competitive and commercial dispute.

2. CrowdVolt operates an online marketplace through which users buy, sell, and transfer tickets to concerts, festivals, and other live events. Radiate operates a social-networking and event-discovery platform that, since October 2025, has offered its own competing ticket resale marketplace. The two companies compete directly for the same base of ticket buyers and sellers for live music events, especially in the electronic music space.

3. For more than two years, Radiate's own co-founder accessed and used CrowdVolt's platform under the false identity of John Summit—a real and internationally known American house/tech-house DJ and producer—in violation of CrowdVolt's Terms of Use, while Radiate separately solicited comparative product feedback from CrowdVolt's own users through a disguised account on Radiate's platform. Radiate thereafter launched a marketplace feature mirroring the core functionality CrowdVolt had built, which Radiate's own users publicly recognized as derivative of CrowdVolt's product.

4. When CrowdVolt's growth outpaced Radiate's, Radiate did not compete on the merits. Instead, acting through outside counsel, Radiate sent CrowdVolt and its officers a series of demand letters accusing them of criminal violations of the Computer Fraud and Abuse Act and expressly warning that, absent immediate compliance with Radiate's demands, Radiate would refer the matter to criminal authorities—leverage Radiate has used, and continues to use, to extract concessions and a substantial monetary payment from CrowdVolt in connection with what is

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

fundamentally a civil, commercial dispute.

5. Radiate's assertions of illegal conduct by CrowdVolt are legally baseless. The data CrowdVolt personnel are alleged to have viewed on Radiate's platform are ordinary user-profile and event-listing information that Radiate's platform makes available to any registered user. Because this data is accessible to any registered user of Radiate's platform, it is not a trade secret under the Defend Trade Secrets Act. Moreover, CrowdVolt personnel accessed only areas of Radiate's platform that their own credentials permitted, which does not violate the Computer Fraud and Abuse Act as a matter of law. *See Van Buren v. United States*, 593 U.S. 374 (2021).

6. CrowdVolt brings this action to (a) obtain a judicial declaration that its conduct did not violate the Computer Fraud and Abuse Act or the Defend Trade Secrets Act; (b) hold Radiate accountable for its extortionate use of the threat of criminal prosecution to obtain civil leverage and for its related unfair competitive conduct; and (c) recover damages for Radiate's own inducement of violations of CrowdVolt's Terms of Use.

## PARTIES

7. Plaintiff CrowdVolt Corp. is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York. CrowdVolt operates an online marketplace and mobile application through which users buy, sell, and transfer tickets to live events.

8. Defendant Radiate the World, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York. Radiate operates a social event and community platform through which users discover events, form groups, and communicate with other attendees.

9. Upon information and belief, Radiate was co-founded by, among others, Philip Butler ("Butler") and Michael Tom, who together with others direct Radiate's business, product, and strategic decisions. On information and belief,

Butler is an officer of Radiate and functions as its chief executive officer. Butler is referenced herein as a non-party whose conduct as Radiate's agent is attributable to Radiate; he is not named as a defendant.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Counts I and II under 28 U.S.C. § 1331 because those claims arise under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has supplemental jurisdiction over Counts III, IV, and V under 28 U.S.C. § 1367(a) because those claims are so related to Counts I and II that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11. This Court has personal jurisdiction over Radiate because Radiate's co-founder and agent, Philip Butler, personally and repeatedly accessed CrowdVolt's platform in breach of its Terms of Use while physically present in this District, including from Inglewood, California on September 9 and September 10, 2025, from Los Angeles, California on September 17, 2025, and from East Los Angeles, California on October 18, 2025, as alleged herein. Those acts, undertaken by Butler in the course of and for the benefit of Radiate's business, are properly attributable to Radiate under ordinary principles of agency and constitute purposeful availment of the privilege of conducting activities within this forum.

12. Radiate's contacts with this District are not limited to Butler's individual conduct. Radiate's own platform reflects that Radiate actively operates its event-discovery and ticketing marketplace in connection with live events held within this District, including an event held in Downtown Los Angeles on October 12, 2025, an event scheduled to occur in Los Angeles on September 12, 2026, and a multi-day music festival scheduled to occur at Empire Polo Club in Indio, California, on October 11 and 12, 2026. Radiate's operation of its platform in connection with events in this District is directly related to the ticketing and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

marketplace conduct at issue in this action, and constitutes purposeful availment of the privilege of conducting business in this forum sufficient to support specific personal jurisdiction over Radiate independent of Butler's individual contacts. *See Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021) (specific jurisdiction may rest on a defendant's continuous and systematic business contacts with the forum that relate to the plaintiff's claims, without requiring strict causation).

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to CrowdVolt's claims occurred in this District, including Butler's repeated access to CrowdVolt's platform under a false identity, in breach of CrowdVolt's Terms of Use, while physically present in this District on the occasions alleged herein.

14. Venue is independently proper in this District under 28 U.S.C. § 1391(b)(2) for the further and separate reason that a substantial part of the events giving rise to Counts I and II occurred here. Those Counts concern whether the conduct Radiate itself attributes to CrowdVolt personnel—including the account activity Radiate attributes to CrowdVolt employee Drew Wicks—violated the Computer Fraud and Abuse Act or the Defend Trade Secrets Act. Upon information and belief, Wicks, who holds a California driver's license, resided in Los Angeles, California, within this District, from at least October 2025 until February 2026, a period substantially overlapping the timeframe Radiate's own complaint places at the center of the conduct it attributes to CrowdVolt personnel generally. Venue under § 1391(b)(2) turns on where the events giving rise to a claim occurred, not on whose conduct is at issue or which party attributes that conduct to whom.

15. Because Radiate is subject to personal jurisdiction in this District with respect to this action for the reasons stated above, Radiate resides in this District within the meaning of 28 U.S.C. § 1391(c)(2) and (d). Venue is therefore independently proper in this District under 28 U.S.C. § 1391(b)(1), in addition to the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

grounds set forth above.

## FACTUAL ALLEGATIONS

### A. CrowdVolt and Radiate Compete for the Same Users

16. CrowdVolt was founded in 2024 and has built a marketplace that allows users to buy and sell tickets to concerts, festivals, and other live events, including through direct integrations with ticketing platforms.

17. Radiate operates a platform that combines social-networking features —group chats tied to events, user profiles, and community discovery—with, since October 2025, its own ticket resale marketplace known as “Radiate Marketplace.”

18. CrowdVolt and Radiate compete for overlapping users interested in live events, particularly in the electronic music and nightlife scene.

### B. Radiate Studies CrowdVolt's Product Before Launching a Competing Feature

19. On June 7, 2024, Radiate co-hosted an event in New York City titled “Consumer Social at Night: A Tech Showcase & Party NY #TechWeek,” at which Radiate hosted CrowdVolt, where CrowdVolt presented its product to an audience of investors and founders.

20. In December 2024, an account on Radiate's platform bearing the display handle “@platform”—a handle inconsistent with Radiate's ordinary user-facing account naming conventions and, on information and belief, controlled by Radiate rather than an ordinary member of the public—sent an unsolicited message to a mutual CrowdVolt/Radiate user, Cameron Vetrano, asking: “What do you like about using Radiate for buying and selling tickets compared to Crowdvolt? Conversely, what do you prefer about using Crowdvolt?” Vetrano responded with detailed comparative feedback.

21. In October 2025, Radiate launched “Radiate Marketplace,” a resale-ticketing feature substantially similar to the core marketplace functionality CrowdVolt had already built and had described, through Vetrano, to the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

"@platform" account less than a year earlier. Following the launch, Radiate's own users publicly commented that it would have been preferable for Radiate to partner with CrowdVolt rather than build a competing feature.

**C. Radiate's Co-Founder Employs a False Identity to Access CrowdVolt in Violation of Its Terms of Use**

22. CrowdVolt's Terms of Use, which are a condition of registering an account and to which every CrowdVolt user must agree, provide (among other things) that users must "provide true, accurate and complete data … which may include [their] legal and current name," agree "not to create an account using a false identity or information," subject to a fee of up to $10,000, and agree not to "impersonat[e] any person or entity."

23. On or about April 2, 2024, an individual using the email address philip.noel.butler@gmail.com and the phone number (305) 761-9531 created a CrowdVolt account under the display name "John Summit," which is the name of a real, internationally known disc jockey with no connection to the account holder.

24. On information and belief, that account belongs to and has at all relevant times been used by Philip Butler, a co-founder of Radiate who upon information and belief functions as its chief executive officer.

25. Butler also linked the fictitious John Summit account to external accounts with credentials ending in the "@radiatetheworld.com" domain, which upon information and belief is Radiate's email domain.

26. Between April 2024 and September 2026, Butler used the "John Summit" account to browse CrowdVolt's platform on dozens of occasions and to complete eleven transactions, totaling approximately $1,375, without ever correcting the account to reflect his true identity.

27. Upon information and belief, based on IP address geolocation data reflected in CrowdVolt's own platform records, Butler accessed the "John Summit" account from within this District on multiple occasions during a six-week period in

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

the fall of 2025, including from Inglewood, California on September 9, 2025 and again on September 10, 2025, from Los Angeles, California on September 17, 2025, and from East Los Angeles, California on October 18, 2025.

28. Butler undertook and maintained this false identity, at least in part, in the course of and for the benefit of his role at Radiate, including to observe and evaluate the design, features, pricing, and user experience of a direct competitor's product.

29. Butler's creation and continued use of the "John Summit" account breached, and continues to breach, CrowdVolt's Terms of Use.

**D. Radiate Makes Threats of Referral for Criminal Prosecution to Extract Civil Concessions**

30. On July 28, 2026, Radiate, through its counsel, Greenberg Traurig, LLP, sent a letter to CrowdVolt's Chief Technology Officer, Chief Executive Officer, and Chief Operating Officer accusing them of unauthorized access to Radiate's platform in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Defend Trade Secrets Act, 18 U.S.C. § 1836, among other claims, and demanding that CrowdVolt cease all access to Radiate's platform and institute a sweeping litigation hold by close of business on July 30, 2026.

31. The July 28, 2026 letter warned that, if CrowdVolt did not comply, Radiate would "pursue all available legal remedies without further notice, including but not limited to referral of this matter to criminal authorities."

32. On July 30, 2026, Radiate, again through Greenberg Traurig, sent a second letter naming additional CrowdVolt personnel and repeating the same threat—that Radiate would refer the matter to criminal authorities, among other remedies, if CrowdVolt did not comply with Radiate's demands—this time by close of business the following day, July 31, 2026.

33. The litigation hold Radiate demanded was extraordinarily broad, reaching, among other things, "[a]ll prompts, conversations, outputs, generated

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

code, or other interactions with AI systems or coding assistants" and "[a]ll financial records, invoices, subscription records, purchase records, payment records, expense reports, [and] billing records" of CrowdVolt and its personnel.

34. The allegations of purported illegal conduct by CrowdVolt within Radiate's extortionate demand letters are legally baseless.

35. Radiate's contention that CrowdVolt personnel's access and collection of data publicly available on Radiate's own platform somehow constituted misappropriation of trade secrets in violation of the Defend Trade Secrets Act is meritless. The Defend Trade Secrets Act protects only information that derives independent economic value from "not being generally known to, and not being readily ascertainable through proper means by," another person who can obtain economic value from its disclosure or use, and that is the subject of reasonable measures to keep secret. 18 U.S.C. § 1839(3)(A)–(B). The categories of data Radiate asserted were 'misappropriated' were user profile information such as name, username, photographs, birthday and age, approximate location, bio, and event and community memberships, event listing information such as event name, description, venue, date, time, promotional image, and resale pricing, and the content of event group chats—all of which are, by Radiate's own description, ordinary features of user profiles and event listings accessible within Radiate's platform to any person who registers a free account. Because this data is accessible to any registered user of Radiate's platform, it is neither secret nor subject to reasonable measures to maintain its secrecy as to other registered users—and so that data does not constitute a "trade secret" within the meaning of 18 U.S.C. § 1839(3). Information that a business voluntarily discloses to the world does not become a trade secret merely because that business does not like that a competitor's personnel viewed it.

36. Radiate's contention that CrowdVolt violated the Computer Fraud and Abuse Act is likewise legally baseless. Each account associated with CrowdVolt personnel that accessed Radiate's platform was a validly registered account with

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

credentials permitting access to the same areas of Radiate's platform—including user profiles, event listings, and group chats—that are accessible to any other registered Radiate user. Under *Van Buren v. United States*, 593 U.S. 374 (2021), a computer user does not access a computer "without authorization" or "in excess of authorized access" within the meaning of 18 U.S.C. § 1030 merely by violating a platform's terms of use restricting the purpose or manner of access to information the user is otherwise permitted to view; the statute reaches only access to areas of a computer system that a user's credentials do not extend to.

37. Nevertheless, CrowdVolt responded to Radiate's letters on August 4, 2026, confirming that it had ceased all interaction with Radiate's platform and had implemented a litigation hold consistent with Radiate's demands, while expressly denying any admission of liability and reserving all rights and defenses.

38. CrowdVolt complied with Radiate's cease-and-desist demands in part due to Radiate's express threat that noncompliance would result in referral of the matter to criminal authorities.

**E. Radiate Makes Extortionate Demands for Payment**

39. On September 10, 2026, CrowdVolt advised Radiate that CrowdVolt was not using any data pulled from Radiate and was willing to delete any such data, but that it could not do so unless Radiate consented due to its litigation hold demand. On September 11, 2026, Radiate's founder, Philip Butler, responded by sending CrowdVolt's Chief Executive Officer a demand for a payment of $625,000 to Radiate and a series of ongoing competitive restrictions on CrowdVolt's future conduct as a condition of any resolution. Butler set a deadline of September 15, 2026 for CrowdVolt to agree to this framework, warning that if CrowdVolt did not do so, Radiate would "return the matter to counsel to proceed accordingly"—thus invoking the same threatened escalation, including potential criminal referral, first raised in the July 2026 demand letters.

40. CrowdVolt has not paid the $625,000 demanded by Radiate, nor does it

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

intend to do so.

**F. Radiate's Own Allegations Place Additional CrowdVolt Personnel Conduct in This District**

41. In the draft complaint Radiate transmitted to CrowdVolt under cover of a letter dated August 11, 2026, Radiate alleges that Drew Wicks, a CrowdVolt employee, created and operated multiple accounts on Radiate's platform under fictitious identities and used those accounts to engage in the conduct Radiate attributes to CrowdVolt personnel generally.

42. Wicks joined CrowdVolt as a part-time employee in October 2025 and holds a California driver's license.

43. Radiate's draft complaint further alleges that another CrowdVolt-affiliated account it attributes to CrowdVolt personnel was active on Radiate's platform from approximately September 2025 to February 2026—a period substantially overlapping the period during which, upon information and belief, Wicks resided in Los Angeles, California.

44. Wicks resided in Los Angeles, California (*i.e.*, within this District) from at least October 2025 until February 2026, when he relocated to New York, substantially overlapping the timeframe Radiate's own complaint places at the center of the conduct it attributes to CrowdVolt personnel.

45. Radiate's own allegations therefore place a substantial part of the conduct underlying Counts I and II of this Complaint within this District, independent of and in addition to Butler's presence in this District as alleged above.

**COUNT I**

**Declaratory Judgment — No Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

46. CrowdVolt repeats and realleges each of the foregoing allegations as if fully set forth herein.

47. Radiate has accused CrowdVolt and its personnel of violating the

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and has expressly threatened to pursue civil and criminal remedies against CrowdVolt on that basis.

48. An actual, substantial, and immediate controversy exists between CrowdVolt and Radiate as to whether CrowdVolt's conduct violated the Computer Fraud and Abuse Act. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

49. Even accepting as true (for purposes of this Count only) Radiate's allegations regarding the manner in which certain CrowdVolt personnel accessed Radiate's platform, that access did not violate the Computer Fraud and Abuse Act. Under *Van Buren v. United States*, 593 U.S. 374 (2021), a computer user does not access a computer "without authorization" or "in excess of authorized access" within the meaning of 18 U.S.C. § 1030 merely by violating a platform's terms of use restricting the purpose or manner of access to information the user is otherwise permitted to view; the statute reaches only access to areas of a computer system that a user's credentials do not extend to.

50. Each account associated with CrowdVolt personnel that accessed Radiate's platform was a validly registered account with credentials permitting access to the same areas of Radiate's platform—including user profiles, event listings, and group chats—that are accessible to any other registered Radiate user.

51. CrowdVolt is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that its conduct did not violate the Computer Fraud and Abuse Act.

**COUNT II**

**Declaratory Judgment — No Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836**

52. CrowdVolt repeats and realleges each of the foregoing allegations as if fully set forth herein.

53. Radiate has accused CrowdVolt and its personnel of misappropriating Radiate's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1836, and has expressly threatened to pursue civil and criminal remedies against CrowdVolt on that basis.

54. An actual, substantial, and immediate controversy exists between CrowdVolt and Radiate as to whether CrowdVolt misappropriated any trade secret belonging to Radiate.

55. Even accepting as true, for purposes of this Count only, Radiate's allegations regarding the manner and volume in which certain CrowdVolt personnel accessed and collected data from Radiate's platform, that data does not constitute a “trade secret” within the meaning of 18 U.S.C. § 1839(3), and CrowdVolt therefore did not, and could not, misappropriate a trade secret in violation of the Defend Trade Secrets Act.

56. The Defend Trade Secrets Act protects only information that derives independent economic value from “not being generally known to, and not being readily ascertainable through proper means by,” another person who can obtain economic value from its disclosure or use, and that is the subject of reasonable measures to keep secret. 18 U.S.C. § 1839(3)(A)–(B). The categories of data Radiate has identified as misappropriated — including user profile information such as name, username, photographs, birthday and age, approximate location, bio, and event and community memberships, event listing information such as event name, description, venue, date, time, promotional image, and resale pricing, and the content of event group chats — are, by Radiate's own description, ordinary features of user profiles and event listings accessible within Radiate's platform to any person who registers a free account.

57. Because this data is visible and accessible to any registered user of Radiate's platform, it is neither secret nor subject to reasonable measures to maintain its secrecy as to other registered users, regardless of the speed, scale, or automated means by which any particular user or group of users viewed, compiled, or downloaded it. Information a business discloses to its own user base does not

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

become a trade secret merely because a competitor's personnel viewed it in unusually high volume or with the assistance of automated tools.

58. CrowdVolt is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that its conduct did not violate the Defend Trade Secrets Act.

**COUNT III**

**Civil Extortion — Cal. Penal Code §§ 518, 519, 523**

59. CrowdVolt repeats and realleges each of the foregoing allegations as if fully set forth herein.

60. On July 28 and July 30, 2026, Radiate, through its counsel, threatened that if CrowdVolt did not immediately cease all access to Radiate's platform and institute the litigation hold Radiate demanded, Radiate would refer the matter to criminal authorities, among other remedies.

61. A threat to accuse another of a crime, made to compel that person to do or refrain from doing an act, constitutes extortion under California Penal Code §§ 518, 519(3), and 523 regardless of whether the underlying accusation is true and regardless of whether the threatening party could otherwise have sought the same result through lawful means. *See Flatley v. Mauro*, 39 Cal. 4th 299 (2006); *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799 (2013). The vice of extortion lies in using the threat of criminal prosecution as leverage to obtain a civil result, not in the reasonableness of the result sought.

62. California Penal Code § 518 extends to the obtaining of “property or other consideration,” including the compelling of another to perform or refrain from performing an act.

63. CrowdVolt, in light of the threatened criminal referral, complied with Radiate's July 2026 demands by ceasing all interaction with Radiate's platform and instituting the litigation hold Radiate demanded by August 4, 2026.

64. Radiate's threat did not end there. On September 11, 2026, Radiate's founder, Philip Butler, invoked the same threatened mechanism—warning that,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

absent resolution, Radiate would "return the matter to counsel to proceed accordingly"—to demand, as a condition of any resolution: (a) access through a forensic firm to CrowdVolt's systems, source code, and internal communications; (b) a payment of $625,000; and (c) ongoing competitive restrictions on CrowdVolt's future conduct.

65. Radiate's demand for a $625,000 payment, for competitive restrictions, and for access to CrowdVolt's systems, source code, and internal communications, are demands for property and other consideration to which Radiate has no independent right. Access of the kind Radiate demanded is available, if at all, only through discovery in litigation, subject to the proportionality limits and protective orders that govern civil discovery—not through a unilateral demand backed by the threat of criminal referral.

66. CrowdVolt has refused, and continues to refuse, Radiate's September 2026 demands, including the demand for access to its systems and the $625,000 payment. That refusal does not immunize Radiate's conduct: a demand backed by a threat to accuse another of a crime is extortionate whether or not the demand succeeds. *See Mendoza v. Hamzeh*, 215 Cal. App. 4th 799 (2013) (extortionate demand actionable irrespective of whether the recipient paid); *Monex Deposit Co. v. Gilliam*, 666 F.Supp.2d 1135 (C.D. Cal. 2009) (same).

67. Radiate's threats are not protected activity within the meaning of California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, notwithstanding that they were communicated by counsel in the form of prelitigation correspondence. Conduct that constitutes extortion as a matter of law falls outside the scope of protected petitioning or free speech activity under the anti-SLAPP statute, regardless of the litigation context in which the threat is made. *See Flatley v. Mauro*, 39 Cal. 4th 299, 328–33 (2006); *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799, 805–06 (2013) (denying anti-SLAPP motion directed at civil extortion claim arising from an attorney demand letter that threatened referral to criminal and administrative

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

authorities to extract a payment).

68. Radiate's threats were further wrongful for the independent reason that the trade secret misappropriation theory underlying them fails as a matter of law, as alleged in Count II. A threat of criminal referral premised on a legally deficient trade secret theory—as opposed to a good-faith, colorable claim—is further evidence that Radiate's threats were not a legitimate exercise of its rights but a pretext for extracting concessions to which it was not entitled.

69. As a direct and proximate result of Radiate's extortionate conduct, CrowdVolt has suffered damages in an amount to be proven at trial, including the costs of complying with Radiate's July 2026 demands and the costs of investigating and responding to Radiate's escalating demands.

70. Radiate's conduct was willful, malicious, and oppressive, entitling CrowdVolt to an award of punitive damages under California Civil Code § 3294.

## COUNT IV

## Violation of California's Unfair Competition Law — Cal. Bus. & Prof. Code § 17200 et seq.

71. CrowdVolt repeats and realleges each of the foregoing allegations as if fully set forth herein.

72. Radiate's conduct, as alleged herein — including its extortionate threats of criminal referral, its use of a disguised account to solicit competitive intelligence from CrowdVolt's own users, and its ratification of its co-founder's use of a false identity to access CrowdVolt's platform in violation of CrowdVolt's Terms of Use—constitutes an unlawful, unfair, and/or fraudulent business practice within the meaning of California Business and Professions Code § 17200 et seq.

73. Radiate's conduct is "unlawful" within the meaning of § 17200 because it violates, among other things, California Penal Code §§ 518, 519, and 523, and CrowdVolt's contractual rights under its Terms of Use.

74. Radiate's conduct is "unfair" within the meaning of § 17200 because its

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

harm to CrowdVolt and to competition outweighs any utility it may have, and because it offends established public policy against the use of threatened criminal prosecution to gain advantage in a civil dispute.

75. As a direct and proximate result of Radiate's unfair competition, CrowdVolt has suffered injury in fact and has lost money and property, including the costs of complying with Radiate's demands and competitive harm resulting from Radiate's use of information obtained through its co-founder's false-identity account and its disguised solicitation of CrowdVolt's users.

76. CrowdVolt is entitled to restitution, injunctive relief, and such other relief as the Court deems proper under Cal. Bus. & Prof. Code § 17203.

**COUNT V**

**Intentional Interference with Contractual Relations**

77. CrowdVolt repeats and realleges each of the foregoing allegations as if fully set forth herein.

78. CrowdVolt's Terms of Use constitute a valid and binding contract between CrowdVolt and each user who creates an account on its platform, including Philip Butler, the individual who created and has at all relevant times controlled the “John Summit” account described herein.

79. Butler's creation and continued use of the “John Summit” account under a false identity breached Sections 3, 4, and 6.2(b) of CrowdVolt's Terms of Use, which prohibit the provision of false personal information, the creation of an account using a false identity, and the impersonation of any person or entity.

80. On information and belief, Radiate, through officers and decisionmakers other than Butler, knew of Butler's use of the “John Summit” account to access and evaluate CrowdVolt's platform under a false identity, and knew that such use was undertaken, at least in part, for Radiate's benefit and in furtherance of Radiate's competitive evaluation of CrowdVolt's product.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

81. Radiate intentionally directed, encouraged, ratified, and/or accepted the benefit of Butler's continued use of the “John Summit” account, with the intent to induce and facilitate Butler's ongoing breach of his contractual obligations to CrowdVolt, or with knowledge that such a breach was substantially certain to result.

82. Radiate's conduct was a substantial factor in causing, and did in fact cause, Butler's continued breach of CrowdVolt's Terms of Use.

83. CrowdVolt's Terms of Use provide for a fee of up to $10,000 for the creation of an account using a false identity.

84. As a direct and proximate result of Radiate's intentional interference, CrowdVolt has been damaged in an amount to be proven at trial, including the fee provided for under its Terms of Use and the competitive harm resulting from Radiate's access to CrowdVolt's platform through the false-identity account.

85. Radiate's conduct was willful, malicious, and oppressive, entitling CrowdVolt to an award of punitive damages under California Civil Code § 3294.

**PRAYER FOR RELIEF**

WHEREFORE, CrowdVolt respectfully requests that the Court enter judgment in its favor and against Radiate as follows:

A. On Count I, a declaration that CrowdVolt's conduct did not violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

B. On Count II, a declaration that CrowdVolt's conduct did not violate the Defend Trade Secrets Act, 18 U.S.C. § 1836;

C. On Count III, compensatory damages, punitive damages, and such other relief as the Court deems just and proper;

D. On Count IV, restitution, injunctive relief, and such other relief as the Court deems just and proper under Cal. Bus. & Prof. Code § 17203;

E. On Count V, punitive damages, and such other relief as the Court deems just and proper;

F. Reasonable attorneys' fees and costs to the extent recoverable by law;

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

G. Pre- and post-judgment interest as allowed by law; and

H. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

CrowdVolt hereby demands a trial by jury on all issues so triable.

DATED: September 11, 2026

Respectfully submitted,

SIDEMAN & BANCROFT LLP

By: *_/s/ Ronald J. Fisher_*
Ronald J. Fisher
Attorneys for CrowdVolt, Corp.